UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
BEATRICE ADAMS, NINA
CASTLEBERRY, MARIA MONCHE,
TINA O'BRIEN, and ELDORA QUICK,

               Plaintiffs,

-against-

THE CITY OF NEW YORK,

               Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 07-CV-2325 (FB) (RER)

------------------------------------------------------x
BEATRICE ADAMS,

               Plaintiff,

-against-           Case No. 13-CV-271 (FB) (RER)

THE CITY OF NEW YORK,
NEW YORK CITY DEPARTMENT OF
CORRECTION, MARTIN F. HORN,
DORA B. SCHRIRO, JOSEPH RUSSO,
EDMUND SALPIETRO, JOSE
VASQUEZ, CARMINE LABRUZZO,
DARIO EMMANS, and ALISON
YTREOY,

               Defendants.
------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
LINDA CRONIN, ESQ.
Cronin & Byczek LLP
1983 Marcus Avenue, Suite C-120
New Hyde Park, NY 11042

SUSAN B. EGAN, ESQ.
Egan Law Firm
805 Third Avenue, 10th floor
New York, NY 10022

**BLOCK, Senior District Judge:**

On August 14, 2014, Magistrate Judge Ramon E. Reyes issued a Report & Recommendation ("R&R") in a fee dispute between two law firms, Cronin & Byczek ("C&B") and the Egan Law Firm ("ELF"), that represented Beatrice Adams ("Adams") in separate lawsuits. The R&R recommended that ELF be awarded $7,650.77 in expenses and $26,580.99 in attorneys' fees, for a total award of $34,231.76. *See* R&R at 20.

C&B timely objected to the R&R. *See* Objection to Report and Recommendation, *Adams et al. v. City of New York*, No. 07-cv-2325 (E.D.N.Y. Sept. 11, 2014), Docket Entry No. 114 ("Objection Letter"). Upon *de novo* review, the Court adopts the R&R in its entirety.

**I.**

This dispute arises out of two lawsuits that were brought by Adams, a former corrections officer, against the City of New York, alleging that she was mistreated by the New York City Department of Correction ("DOC") and by various DOC employees while working at Rikers Island.

ELF initially represented Adams in the first lawsuit ("2007 Lawsuit"), which was

filed in the Eastern District of New York on June 8, 2007. The 2007 Lawsuit alleged that DOC had discriminated against Adams on the basis of race and gender, had permitted a hostile work environment, and had retaliated against her when she complained.[1] On March 19, 2013, however, Adams discharged ELF "for cause" and designated C&B as replacement counsel. At that time, C&B was representing Adams in a second lawsuit ("2013 Lawsuit"), which was filed in the Eastern District of New York on January 16, 2013. This second suit also arose out of Adams' employment at Rikers Island and alleged, among other claims, that DOC had retaliated against Adams for the 2007 Lawsuit.

In August 2013, C&B settled the 2007 and 2013 Lawsuits for $190,000. The settlement proceeds were attributed solely to the 2013 Lawsuit, while Adams' claims in the 2007 Lawsuit were dismissed with prejudice. In September 2013, ELF requested a conference to fix the amount of its attorneys' fee lien for the work it performed in connection to the 2007 Lawsuit. C&B opposed the request, arguing that ELF was not entitled to any of the settlement funds because it had been discharged for cause and because it had done no work on the 2013 Lawsuit. On November 1, 2013, the Court ordered C&B to retain $35,000, approximately half of the one-third contingency fee,

---

[1] Adams was joined in the lawsuit by four other plaintiffs, who were also former corrections officers at Rikers Island. For the purposes of clarity, the Court will address only Adams' claims.

3

to be held in an escrow account pending resolution of the fee dispute, and referred the dispute to Magistrate Judge Reyes, who conducted two days of evidentiary hearings in December 2013.

In the R&R now before the Court, Magistrate Judge Reyes recommended that ELF be awarded attorneys' fees and expenses totaling $34,231.76. First, Magistrate Judge Reyes found that ELF was terminated without just cause and is therefore entitled to assert a charging lien to secure payment of reasonable fees and expenses. Second, Magistrate Judge Reyes found that the 2013 Lawsuit was the "logical sequence" of the 2007 Lawsuit, and that ELF is therefore entitled to recover from the settlement proceeds of the 2013 Lawsuit. R&R at 9. Finally, Magistrate Judge Reyes evaluated evidence submitted by both law firms and concluded that ELF should be awarded $7,650.77 in expenses and $26,580.99 in attorneys' fees.

C&B timely objected to the R&R, taking issue with each of Magistrate Judge Reyes's conclusions. The Court reviews C&B's objections *de novo*. *See* 28 U.S.C. § 636(b)(1).

**A.     Just Cause Termination of ELF**

Under New York law, attorneys may assert their right to a lien upon the proceeds of their client's cause of action, which attaches from the commencement of that action. N.Y. Jud. Law § 475. However, "[i]t is well-settled that an attorney loses his right to enforce a charging lien if the attorney . . . is discharged for cause." *Petition of Harley*

4

*& Browne*, 957 F. Supp. 44, 48 (S.D.N.Y. 1997). A discharge "for cause" exists where "the attorney has engaged in some kind of misconduct, has been unreasonably lax in pursuing the client's case, or has otherwise improperly handled the case." *Garcia v. Teitler*, No. 04-cv-832, 2004 WL 1636982, at *5 (E.D.N.Y. July 22, 2004).

C&B advances two principal reasons why ELF was discharged for cause. First, C&B argues that ELF was negligent when it failed to advise Adams about how a bankruptcy filing would affect her federal lawsuit. However, the retainer agreement between ELF and Adams quite clearly limits the scope of representation to the 2007 Lawsuit only. Further, in the evidentiary hearing before Magistrate Judge Reyes on December 30, 2013, Adams admitted that she had not retained ELF to give her legal advice regarding bankruptcy, but had hired a bankruptcy attorney to whom she gave information and paperwork regarding her pending federal lawsuits. *See* Transcript of December 30 Hearing at 64:20-71:22. ELF therefore breached no legal duty by refusing to advise Adams on her bankruptcy petition.

C&B next argues that Adams discharged ELF because ELF "fail[ed] to prevail on any significant claim for Adams in the 2007 lawsuit." Objection Letter at 3. This argument misstates the facts. In an order dated September 22, 2011, the Court granted the City of New York's motion for summary judgment with respect to Adams' employment discrimination claims, but denied summary judgment with respect to her hostile workplace, retaliation, and *Monell* claims. *See Adams v. City of New York*, 837

5

F. Supp. 2d 108 (E.D.N.Y. 2011). Moreover, failure to prevail on a claim is not, in and of itself, proof of failure to adequately represent a client's interests. While the record does show that Adams was dissatisfied with ELF's performance, the Court agrees with Magistrate Judge Reyes that the record does not support a finding of misconduct or breach of legal duty by ELF.

**B. Relatedness of 2007 and 2013 Lawsuits**

Next, C&B argues that the 2013 Lawsuit is separate and distinct from the 2007 Lawsuit, and that ELF is therefore not entitled to any proceeds from the settlement of the 2013 Lawsuit. In particular, C&B argues that the 2013 Lawsuit "covers a completely subsequent time period[,] involves a different employment assignment and seeks damages for discrimination against different individual defendants." Objection Letter at 4.

The Court agrees with Magistrate Judge Reyes that there is a "causal connection" between the 2007 and 2013 Lawsuits such that ELF is entitled to a share of the settlement proceeds. *See* R&R at 8. Both lawsuits arise out of Adams' employment at Rikers Island, and specifically out of a DOC pattern and practice of discriminating against Adams by placing her in arduous and unpleasant work assignments. There are many factual similarities between the two lawsuits; for example, both seek damages arising out of Adams' placement at Gate 9 Security, "one of the most undesirable posts at [Rikers Island Security Unit]." Complaint at 18, *Adams et al. v. City of New York*,

6

No. 07-cv-2325 (E.D.N.Y. June 8, 2007), Docket No. 1; *see also* Complaint at 7, *Adams v. City of New York et al.*, No. 13-cv-0271 (E.D.N.Y. Jan. 16, 2013), Docket No. 1 (alleging that Adams was assigned to Gate 9, "one of the most undesirable posts at [Rikers Island Security Unit].").

It is undeniably true that the 2013 Lawsuit encompasses different claims than the 2007 Lawsuit, including that Adams was assigned to another undesirable post in October 2010, was subject to false disciplinary charges in November 2010, and was ultimately forced to retire in February 2011. But each of these claims arises out of the same factual nucleus as the first action, namely the alleged pattern of discrimination and retaliation by DOC. Further, as Magistrate Judge Reyes noted, C&B's complaint in the 2013 Lawsuit "makes repeated references to the 2007 Lawsuit as the reason for the retaliatory practices of the DOC and its employees." R&R at 8.

In its Objection Letter, C&B attempts to disavow the statements of one of its associates, who in an earlier letter to the Court stated that the 2013 Lawsuit "pertain[s] to incidents of discrimination that are related and stem from an ongoing policy of discrimination alleged within Plaintiff's 2007 action." Letter in Opposition to Defendant's Pre-Motion Letter at 2, *Adams v. City of New York et al.*, No. 13-cv-0271 (E.D.N.Y. August 27, 2013), Docket No. 28. That associate, however, was correct. Since the 2013 Lawsuit was the logical sequence of the 2007 Lawsuit, ELF is entitled to recover from the settlement proceeds of the 2013 Lawsuit. *See Neimark v.*

*Martin*,183 N.Y.S.2d 812, 814 (2nd Dep't 1959) (holding that "[t]he attorney's lien attaches to the client's cause of action and any recovery thereon, albeit the recovery is effected in an action other than the action in which the services were rendered . . . This is especially so where the recovery is in an action which is a logical sequence of a prior action in connection with which the services were rendered.").

**C.    Fee Apportionment**

Finally, C&B argues that ELF is not entitled to recover out-of-pocket expenses from the settlement proceeds because such expenses are the responsibility of the client. The parties agree that expenses would ordinarily be deducted from settlement proceeds prior to apportioning fees. Here, however, Adams has already received her share of the settlement proceeds; thus, any solution that requires her to pay ELF's expenses would require her to return money she has already received, inflicting a substantial burden upon her after seven years of litigation.

C&B makes much of ELF's refusal to turn over its file to C&B, and argues that "it is wholly unfair to assess reimbursement of . . . out of pocket disbursements on an attorney who did not get the benefit of the file." Objection Letter at 7. Under New York law, however, "a retaining lien entitles an attorney to keep, as security against payment of fees, all client papers and property, including money, that come into the attorney's possession in the course of employment, unless the attorney is discharged for good cause." *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991).

Since ELF was not discharged for cause and was still owed money by Adams, it had no obligation to turn over its file to C&B, and its refusal to do so cannot be taken into account in apportioning out-of-pocket expenses.

As Magistrate Judge Reyes noted, "[t]here is no simply no measured way for either firm to recover their out-of-pocket expenses from Adams." R&R at 10. The Court finds that Magistrate Judge Reyes proposed solution – to deduct ELF's expenses from the entire one-third contingency fee – is the most sensible and just. C&B's final objection is therefore denied.

## II.

For the foregoing reasons, the Court adopts the R&R and directs the Clerk to enter judgment in accordance with the R&R.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 16, 2014